This is the third case of the morning. People of the state of Illinois v. Dearlise Childrous. And for the appellant, Mr., pronounce your name for me. Alexander Munches. Munches. Mr. Munches and Ms. Flanagan for the appellate. You may proceed. Good morning, Mr. Appellant. You may please report. My name is Alexander Munches. I'm with the Office of the State Appellant Defender, and I represent Dearlise Childrous. Dearlise appeals to the denial of a motion to leave to file a successive post-conviction petition. He raises two issues on appeal. First goes to substance, whether Dearlise should be permitted to file a successive petition raising as-implied challenges under the federal and state constitutions against the discretionary natural life sentence he received when, at age 19, he was an emerging adult. The second issue focuses on process. Whether the circuit court relied on the state's input in the leave to file stage, and thus, this court should remain for further proceedings without the state's input. Now, I'm prepared to take questions on both issues, but I'd like to focus on the first issue on the substance. In 1988, at the age of 19, Dearlise and a friend set out to, quote, get some money by taking a purse. He told the adult boyfriend of his aunt what he was about to do. He and his friend then left, found Beth Akerson, and took her purse. But Akerson put up a struggle, and in that moment, Dearlise shot him. The jury later found him guilty. The court opposed the natural life sentence. He had signed on a ticket. Dearlise had never been enrolled in high school. He was impulsive, in need of supervision, and according to his mother, may have, quote, poisoned his mind. Yet the court found that Dearlise's youth was a negative, faulted Dearlise for failing to enroll in high school and failing to secure employment. Twenty-seven years later, in 2015, Dearlise started to file pro se successive motions, seeking for leave to file successive petitions. He described his mother's drug use, which wasn't apparent to the sentencing court. He also described certificates he had earned over the years, attempting to go to rehabilitation. The appointing counsel then filed an amended motion on Dearlise's behalf. So the issue, Your Honors, is whether Dearlise should be permitted to file a successive petition. May he raise, as applied, challenges under the federal and state constitutions to ultimately demonstrate that the sentencing court failed to consider his youth in its intended circumstances. Would you say that if his case occurred today, the court would automatically have reviewed the factors as to whether or not he should receive a shorter sentence? I think that, let's say, if the events occurred this year and the trial occurred this year and so on, it would be new counsel on Dearlise's behalf to make this as-applied challenge for Dearlise. And so what we're looking at really is that Illinois Supreme Court has signaled strongly to all the lower courts that these as-applied challenges are open. And the idea is that there are some emerging adults that stand on the term of art, people who are in the state in 1919, like Dearlise was, who look more like, mentally, more like juveniles. So there's a presumption that juveniles with the youth in their circumstances is necessarily mitigated. And the Supreme Court is saying, well, there's a cutoff, of course, under Miller, but as-applied challenges are still open. And so this requires factual development and legal argument about an as-applied challenge. And so, again, I would like for this court to keep in mind the procedural posture of this case. This appeal does not require that this court enter judgment once and for all on the constitutionality of Dearlise's sentence. This is a review of a preliminary screening. And at that preliminary screening, there needed to be a primary case showing a cause of prejudice. We have filed a testimony to deny where it's clear from the motion that the claim fails as a matter of law, or where a motion was supporting that the documentation is insufficient. Now, this primary case you're showing, what we really see is that from the years 2012 onward, there's been a constellation of cases that have sort of pushed this legal claim into existence. In 2012, there was Miller that held that mandatory life sentences on juvenile offenders without consideration of mitigating factors, youth in intended circumstances violate the Eighth Amendment. In 2014, you have the Illinois Supreme Court saying that rule applies retroactively. In 2016, you have the U.S. Supreme Court catching up to that Illinois Supreme Court in Montgomery holding the exact same thing. In 2017, you have Holman saying that even discretionary natural life sentences are covered. And most recently, I would say, in 2019, you have this House Part 2 slash House Part B case out of the First District, where they found that an emerging adult had an unconstitutionally long sentence because it had been imposed without the, you know, the consideration of that particular defendant's youth in intended circumstances. Was that case decided upon the Illinois Constitution only, and not the U.S. Constitution? Yes, I believe Justice McBride decided that case on the abortion families clause. And, you know, throughout that sort of time period, 2012 to 2019, what we really see is two sort of punctuating moments from the Illinois Supreme Court. The first one happened early, 2015. That was in Thompson. And there you had a defendant raise this sort of challenge on appeal in a 214-01 petition. And that defendant was the sort of principal shooter of two different people. And the Illinois Supreme Court said, this is not the right thing to do. If you want to do as-applied challenges, it needs to be factual development. And they directed Thompson to the Post-Conviction Parent Act. Four years, I guess three years later, you see the Supreme Court doing a really similar thing against this. They directed, yet again, another petitioner, a defendant, who had gotten relief in the public court, the ultimate relief, directed that petitioner to the Post-Conviction Parent Act. And what we have in this particular case is Diarlis doing basically exactly that. And he did it early, too. It was January, March 2015 when he first started sending in pro-safe violence, mentioning and raising these issues. And I think that the circuit court, who had interacted a lot with Diarlis in recognizing the importance of this issue, appointed counsel. And counsel filed an amended motion. And counsel really put together the legal arguments in March 2016, starting to draw together this long line of cases to explain that this really is the type of case that the Supreme Court is looking to be litigated on the facts. And it's important, too, because the petition also shows sort of a private issue showing prejudice. I think if this court looks back, if 1988 looks back at the sentencing hearing, it's clear that the circuit court did not have the benefit of Pullman and did not have the benefit of Miller. Although the record definitely suggests that these sorts of facts could be very thoroughly litigated down the road under the Post-Conviction Parent Act. We know from the PSI, which references just kind of this fleeting reference to a psychiatric examination that was done in DOJ, we don't have that because it wasn't attached to the PSI. But we know that part of this sort of ultimate sentencing relief is going to require both a look back at who D'Arlis was and a look, you know, more toward the present as to who he is. And that has to do with sort of whether or not he has rehabilitative potential. Because what we're really asking is if D'Arlis is an emerging adult, who Miller should apply to, then what we're asking is sort of what the state really needs to prove to put him away for life forever is that he is the rarest of rare juveniles. And so under Montgomery v. Louisiana, an opinion written by Justice Kennedy, you see at the very end of that opinion he says, what the petitioners have been up to in prison since that initial sentencing hearing is definitely relevant. And it's going to need to be litigated and contested by the state later at different proceedings. But basically what I'm suggesting, Your Honors, is that if you look at the sentencing hearing in D'Arlis' case, you look at the PSI, you look at the amended motion on his behalf, what we have here is a prominent face you show in their prejudice. We have strong suggestions that D'Arlis might be that sort of emerging adult whose mind is more like a juvenile. The psychiatric examination suggested that he was impulsive, that he grew up in a not good environment, that from a young age he was drinking alcohol, and that he had an aunt who was living with an aunt who, quote, poisoned his mind. This PSI suggests, essentially, that D'Arlis is not the rarest of rare people who is completely incorrigible and who should be suffering the most severe penalty that Illinois puts on people at this point in time, a naturalized sentence. We are, of course, saying that we have not proven that. We're just suggesting there's a prominent face you show in their prejudice. There's been a prominent face you show in their cause. In summary, Your Honors, I would just like to say D'Arlis has done precisely what the Supreme Court suggested in attempting to fashion an as-applied challenge. He proactively sought the chance to build a record showing the sentence was constitutionally affirmed. He marshaled science, law, and the particulars of his own life in an attempt to convince the justice system that he should be allowed to prove his as-applied challenges. It is in no way clear that his claim will fail as a matter of law or that it does not deserve further factual development. Accordingly, this Court should reverse the Supreme Court's denial so that D'Arlis may fully litigate how his youthfulness may have impacted both his culpability and his potential for rehabilitation. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court, Counsel. I believe the biggest issue between the State and defendant in this matter is where the procedural posture of this case lies. If I'm understanding the defendant correctly in his brief and in his oral argument here today, he's arguing that we are still in the cause of prejudice screen process in the development of this case. And I don't believe the directive supports that. The Post-Conviction Hearing Act, this is a code that's a little weirder, calls for a three-stage proceeding. However, when you have a multiple petition, you're required to first seek leave. So it adds a fourth preliminary order, an initial, another preliminary proceeding, wherein the Court is required to determine whether or not there's sufficient cause of prejudice. Once that's done, the trial court then appoints counsel in a matter... I guess it could move on to a Stage 1 proceeding, but in all fairness, I can't imagine a trial court finding a prejudice and cause and then saying that there is not a sufficient basis to proceed to a Stage 2 proceeding. So a Stage 1 proceeding in which there has to be some evidence, I think is pretty much wrapped up in the cause-and-effect screening proceeding, regardless. Once that's done and the trial court determines there's a basis to proceed, the trial court appoints counsel, the counsel makes any amendments to the petition he feels necessary, and we have further hearings in the matter. That is what has taken place. It's clear from the record that counsel was appointed, counsel did make amendments, there were multiple hearings on this matter. So we're clearly beyond this initial screening stage. We're in a Stage 2 proceeding. At that time, the defendant is required to make a substantial showing of whether or not an evidentiary proceeding, Stage 3, is appropriate. That's where the court determined that the defendant failed in his petition to establish the requisite information or cause of prejudice necessary to require an evidentiary hearing. I thought you just said a minute ago this particular matter got past the cause of prejudice evaluation and went to Stage 2. And now you just said the opposite. And perhaps that is where the confusion lies, your Honor, because that's exactly what I said. But if you read Bailey, who does address what the procedure ought to be in instances like this, Bailey specifically says that the state cannot participate in the initial screening aspect of the case, but once that's done and it moves on, and counsel is appointed for the defendant, and we're now in a Stage 2 proceeding atmosphere, the state may then file a petition to dismiss, based on the defendant's lack of having established either cause or prejudice, which, again, is exactly what was done here. The state participated in these proceedings at a Stage 2 level and filed a motion to dismiss, alleging that cause of prejudice had not been established. Isn't it evident from the record itself that those things the original sentencing court treated as negatives would actually, at worst, they could cut both ways, but under the present state of the law, as it applies to a juvenile or an emerging adult, would be things that would be mitigated, or at least more fully considered, so that you could make that determination that's required as to whether or not life imprisonment should be imposed. Well, let's be clear, Judge, I think we're talking about no factors, where that's a terminology that's generally applied to that. And it is, of course, impossible to solve for, and I think rather unfair as well, to require a sentencing court from the 20 years before the decision was made to have considered factors that were just enumerated 20 years later. To answer your question directly, though, I don't know, looking at the court's comments when sentencing this defendant, I don't know if the court has before it the known factors I'm not saying that it did. I'm just saying that looking backwards, if we're talking about this being as applied, there's no way he could bring this up before a body of law was created. Now he's saying, or I'm saying, it seems to me that those things which were negatives could actually turn out to work in the defendant's favor so that he would be considered as someone who might have rehabilitative potential. And that you can't, I mean, you say, well, you didn't take advantage of opportunities that you had, or you waited, you've got this juvenile record. Well, that's because you're impulsive, you're not thinking like a 30-year-old. Scientific fact tells us that there are developments that are still going to occur in the emerging adult's brain in regard to behavior and what's appropriate, what's not appropriate, what's lawful, what's not lawful. Are you saying that he can't do that in an amended petition, a Fifth Amendment petition, whatever? No, I'm not saying that at all. But you're saying that the court has already evaluated this at the second stage and said, no. The court has evaluated the petition and the arguments of the defendant and found that they were without merit to proceed to an evidentiary hearing because the law does not apply, as the defendant is suggesting in this and perhaps the court. Miller factors do not apply to a 19-year-old. Oh, well. And the trial court's not in a position to change that law. If this court wishes to, it may. But the trial court did what the trial court should have done and it looked at the applicable law, determined that under the laws that exist today, you don't have an argument here, Mr. Defendant. I'm not going to create, as the trial court, new law here. I've listened to what you've given me, and the law does not give you the basis to move forward that you're suggesting you should have. Are you suggesting there are no cases handled by any courts that have addressed the issue where someone over 18 could still be evaluated for sentencing purposes using the Miller or additional factors that have since developed? No, I think actually two Supreme Court cases, Thompson and Harris, have done so. Although it wasn't necessary for them to address it. And the first district in House as well. House looked at it, but under a different... I don't think they looked at it under the Eighth Amendment. Those were some really unique situations there. I mean, they've been open backwards because they saw what they believed to be a gross injustice in holding that 19-year-old to life in prison when the guy who shot him was off on the street already because he was 17 and the factors applied to him. I'm sure they saw a gross inequity. Even though the Harris Supreme Court told them to reevaluate... or the Supreme Court in the House told them to reevaluate under Harris, they still saw quite an injustice there and thought it needed to be addressed. That's not the situation we have here. Procedurally, the defendant is required to show cause and prejudice at this stage, and he cannot. He has no cause. Now, look at his petition. He's claiming an as-applied challenge. Where are the unique circumstances that apply to him? Well, we don't know because there's no record developed. Isn't that what Harris says? He has to plead against it. He has to establish the facts. He has to at least plead. He's suggested nothing in his petition or in any argument. Even though he tells you to look at the PSI, the sentencing court had the PSI. It knew everything that was in the PSI. But at that time, just like, you know, that's not what applies in this case, but a defendant who has a diagnosis of mental retardation, there have been times in the past that would be held against the defendant because you're not going to be able to learn. Your behavior's probably going to persist. And there have been other times where that's been taken into account in terms of your mental capacity, and it's favorable. Similarly here, the record itself, whether pled or not, shows a series of factors that are arguably mitigating or mitigating not in terms of mitigating against the crime itself, but mitigating as to the length of the sentence. I mean, I picked up on it, and I'm not that quick. I mean, once you start telling me, the guy's got a miserable life. Let's just phrase it that way. But maybe has shown progress. Did you plead the success in locked circumstances? I mean, good behavior, had some certificates? I think the case law on that suggests that you cannot consider any behavior past the sentencing stage. Well, what about what Justice Kennedy said in the Supreme Court that was quoted by counsel? That evidence is certainly relevant. That issue was not thoroughly briefed by either party, nor raised, I think, by Kennedy in his initial brief. But I do recall reading case law on the subject that suggested that the time to consider is at sentencing, and you cannot consider how good he was in jail or how bad he was in jail when you go back to apply the other factors in resentencing the individual. But, you know, I think we're digressing now from the point. And the point is, is there something that could be pled by the defendant which under the Miller factors would cause the sentencing court to re-evaluate the situation? Yes, but the defendant needs to elect those things. He has not. There's nothing in his petition that the sentencing court was not aware of. And if he's going to say, well, if the Miller factors were applied to me, my sentence would have been different, fine. How? Tell me what you were talking about. What specific factors did the sentencing court miss? What should it have known? Miller was saying, in essence, the sentencing court really wasn't educated appropriately because of this developing science, or lack thereof. And so, therefore, I think that that's a mistake, and the sentencing court should consider all these things now. I think it's incumbent upon the defendant, if they're going to come back with one petition after another after another after another, to show the trial court that they have something to talk about, they have some evidence to present, which would cause reasonable people now to determine whether or not the trial judge was appropriately educated. Mr. Longberg, and this petition was filed after Miller and its project. Mm-hmm. Well, so your argument about filing petition after petition after petition really doesn't control here, because this petition is filed after brand-new case law developed, starting with the U.S. Supreme Court, coming all the way down through the Illinois Supreme Court and our appellate courts, has put this case in a different posture. As far as filing a new, fifth, post-conviction petition, right? Where am I wrong then? You're wrong then, Judge, because the law is being developed. I hate to say it to you, Mr. Longberg. No, that's okay. I asked you to do it. You're mistaken. How's that? I have been before. Well, so have I. All right. But I will say that I think that the law that you're now referring to wishes it would. I understand that. I know the argument it's trying to make. It's trying to say, hey, you're making a line right here at 18. Why not 18 and a half? Why not 19 and a half? Why not 20 and a half? Okay, but that argument pertains to a facial challenge, not to an as-applied challenge, according to the Supreme Court in Harris. Am I wrong on that also? No, I think you're correct. And another thing, if a post-conviction petition can be dismissed because the record refutes it, refutes the facts that are asserted, that works in favor of the state, why can't a post-conviction petition be considered in conjunction with a record that supports the assertions the defendant is making, whether he pleads it or not, whether he pleads it specifically or not. Maybe I'm misunderstanding what you think he needs to specifically plead, but if there are references to psychiatric examinations, references to being impulsive, references to not having any education, references to this bad environment, those are exactly the things that would be considered. And those were exactly the things that were considered, Judge. But they were considered in the vacuum of a time, not a vacuum, at a time when there was no recognition legally that young people are different than more mature people in terms of behavior, in terms of judgment, in terms of impulsivity. And I guess I don't understand why it's not retroactive. Is it not retroactive because it's just not, or is it because procedurally, in this case, it doesn't have any retroactive application because it wasn't pled appropriately or fully? I'm not sure I'm understanding. Well, let's say, do you agree that modern science and the approach that courts are taking apply retroactively to a juvenile that was sentenced a year ago? Another decision does, yes. Two years ago. It applies retroactively. It applies retroactively, period. Right. So are you saying it's a matter of public policy? It shouldn't apply to, I think the phrase is emerging adult. I don't know if that's something that appears in the literature, but someone close to that 18-year-old age, who science would tell us is not acting like an ordinary 18-year-old or an ordinary 19-year-old or an ordinary 20-year-old. I don't know if science is telling us that. Science is giving you a wide spectrum of what could happen between all juveniles. But this is, as the court says, an as-applied challenge. I don't think it's really what's being argued. I think what's really being argued is a special challenge. Because there are no specific facts being alleged by this defendant which would make it an as-applied challenge. And that's my point. If you're going to go forward with an as-applied challenge, where are the factors unique to this case, which we're now talking about, as applied to this defendant? He has to tell us why. Well, hasn't he told us enough to deserve it here? He hasn't, because, number one, the law that you're relying upon does not apply to him. He's 19. The law applies to those under 18. He would like to have that law increased to include everyone under 21. And if this court thinks that's the thing to do, okay. But that's not the current law. Okay, counsel. Let me ask you this. Was the last order from the trial court in this matter entered on September 5, 2017, and did it say that petition for leave to file successive post-petition is denied? Sure it is. Is that what is up on appeal? Yes, probably. And so if this court said, well, the court should not have denied that petition for leave to file, all we would be saying is he gets to file, and then all of your arguments today would be addressed, and it would go through the first, second, and third stage, if it made it that far. Maybe it only makes it to the first stage, it's allowed to be filed, and that's the end of it. If the court says no, it's dismissed here. So it seems like to me you're, well, you are arguing, because you started off by saying this is not up on appeal on the denial of a petition for leave to file a PC. It's up on, what, second stage? Was that your argument? I think I'm not. Well, then how do you explain that language I just read to you? I understand this part's confusing. I am confused. Because, you know, if you read Bailey, though, and the whole basis for this thing is, you know, you shouldn't have, say, participation in a prescreening. Okay. But Bailey says the state can file this petition to dismiss based on lack of cause and lack of prejudice having been established. So the state can ask the court to readdress what the court has already initially found, which is there is sufficient cause and prejudice for the state to move forward to stage 2. But the state is allowed to challenge that initial finding by the court. But the state did. And the court then reconsidered and found that the state's position was appropriate after being educated by the state's argument. Now, I think the court did bend over backwards to trial court to try to address this. Well, he went through several issues here, trying to determine whether or not something was meritorious in requiring a court to proceed. And I think he basically came down that a bright line has been drawn at 18. If somebody wishes to change that, well, fine. Let's address that on the merits. But, you know, procedurally, we're on stage 2. There's no question about it. The defendant had counsel. The defendant's counsel did everything the counsel was supposed to do to proceed to stage 2. There was hearings on this. You know, further discussions. This was not something that the judge looked at the pleadings and made a ruling on. So we're at stage 2. Now, you know, what's the cause? The cause of grave indefendence is what the law now allows. No, the law doesn't allow it. There's a bright line at 18. Miller and Prodigy do not abide here. That's your statement. Any more questions? Thank you, Ken. Thank you. Rebella? Yes, Your Honor. So just briefly, DRLIS is, of course, phrasing as applied challenges. So the state's assertions otherwise should not be taken seriously. The state is also wrong on the facts and wrong on the law. If this court is looking for DRLIS-specific details, it would look to the common law record in 2969. That's the amended motion to leave the file where counsel lays out specific DRLIS-related factors. Also, this court could look to the pro se files of DRLIS between the pages of 2,841 and up to 43. DRLIS lays out specific things about himself, specific DRLIS facts, consistent with raising this as an applied challenge. The state is also wrong on the law. The Supreme Court has indicated very clearly that these as applied challenges are viable under the Post-Perdiction Hearing Act. And DRLIS has availed himself of exactly that option. And really remarkably, he did it, I think, about 11 months before the Supreme Court first suggested it in 2015 in Thompson. DRLIS started this file in January 2015. So DRLIS has availed himself of exactly what the Supreme Court said he should do, which is pursue sentencing relief under the Post-Perdiction Hearing Act. Finally, I don't want to get too bogged down on the nature of the proceedings. I think it's clear that the state participated right away. Right after DRLIS filed something in 2015, the state filed a motion to dismiss. There's a lot of state participation. DRLIS, I think, is a frequent filer on a certain number of things. And this particular circuit judge knew that because there was a ballistics filing that Jason Vincent, the trial attorney representing him, went to the court, opened it up, and said, DRLIS, if you want counsel, you can have counsel. That was in 2015. People v. Smith, the only Supreme Court first talking about what successive proceedings should look like, that was 2014. So it's about a year later. People v. Bailey, 2017. So these proceedings kind of fell right in the middle of the Supreme Court describing for all of our benefit what a successive proceeding should look like. And I think the General Assembly is not really taking the Supreme Court at its word and saying we need more guidance. And so to the extent that the parties are confused, that's understandable. The idea that the state could robustly participate as soon as DRLIS filed something pro se, and then say, oh, look, we're at the second stage because we filed a lot of stuff, that reeks of unfairness. So I think if you just look at the Supreme Court's actual rulings, leave the file denied, leave the file denied, you see the court denying this sentencing claim early on. And then also at the very end of the proceedings, again, denying the file. So I think it's clear it's the leave the file stage. But even if it's not, you know, argue I know, second stage, the state has, they spent 20 minutes up here, they didn't even mention reasonable assistance. So if DRLIS had counsel, and if the state is faulting DRLIS for not having an active data attached, for not bringing in the psychiatric report, for not bringing in the certificates from ICFC, the blame lies with counsel, not DRLIS. That would be an easy, low-hanging fruit for the counsel to attach to something. But the fact of the matter is DRLIS didn't need to. It was a motion to leave the file stage. You can look at the sentencing hearings just as you suggested. You can also look at the actual filings. DRLIS-specific facts are in them. Again, this court doesn't have to rule once and for all in the constitutionality of the sentence. All we're saying is you need to get back in the court so you can build out this factual record for this as-applied challenge. If you assume for the moment that you were to prevail, what next? I believe second stage proceedings. What needs to happen is there needs to be maybe some DRLIS-specific attached psychiatric report, perhaps attaching certificates consistent with Montgomery v. Louisiana, and then get that to an evidentiary hearing. The state will have an idea of how it needs to contest these factual claims. They'll also be able to put that evidence on. And then basically what you're looking at is, you know, who is DRLIS, who was DRLIS? But the state will have the opportunity once again to move to dismiss at second stage. Yes, if they leave paragraph 26, the state can move, bring up cause and prejudice again, particularly to find out why wasn't this brought up in the initial post-conviction proceedings. That's inside paragraph 26. No further questions? Thank you. Thank you. We'll take this matter under advice.